SETH P. WAXMAN (*pro hac vice*)
seth.waxman@wilmerhale.com
PATRICK J. CAROME (*pro hac vice*)
patrick.carome@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendant*
**TWITTER, INC.**

[Additional counsel for each defendant are
included on the signature page.]

DAVID H. KRAMER (CA SBN 168452)
dkramer@wsgr.com
LAUREN GALLO WHITE (CA SBN 309075)
lwhite@wsgr.com
WILSON SONSINI
  GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

*Attorneys for Defendant*
**GOOGLE INC.**

KRISTIN A. LINSLEY (CA SBN 154148)
klinsley@gibsondunn.com
JEANA BISNAR MAUTE (CA SBN 290573)
jbisnarmaute@gibsondunn.com
SHELI R. CHABON (CA SBN 306739)
schabon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendant*
**FACEBOOK, INC.**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DEMETRICK PENNIE, RICK ZAMARRIPA<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., GOOGLE INC., FACEBOOK INC.,<br><br>Defendants. | Case No. 3:17-CV-00230-JCS<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TWITTER, INC., GOOGLE INC., AND FACEBOOK, INC. TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Judge: Hon. Joseph C. Spero<br><br>[Fed. R. Civ. P. 12(b)(6)]<br><br>Hearing Date: Aug. 25, 2017 |

# TABLE OF CONTENTS

**Page**

I.  PLAINTIFFS CANNOT EVADE SECTION 230'S ROBUST IMMUNITY ................. 1

   A.  JASTA Did Not Impliedly Repeal Or Abrogate Section 230 ............................ 1

   B.  Section 230 Bars Plaintiffs' "Functionality" Theory ............................................ 4

   C.  Targeting Advertising Does Not Make Defendants Content Providers................ 6

II.  ALL OF PLAINTIFFS' CLAIMS FAIL ON THEIR OWN TERMS ............................ 7

   A.  Plaintiffs Cannot Show Proximate Causation ...................................................... 7

   B.  Plaintiffs Cannot Save Their Secondary Liability ATA Claims .......................... 8

   C.  Plaintiff Pennie Cannot Plead a Cognizable Injury ........................................... 11

   D.  Plaintiffs' Other ATA Arguments Are Meritless .............................................. 12

      1.  The FAC Fails To Allege Violations of 18 U.S.C. §§ 2339A and 2339B .................................................................................................. 13

      2.  Plaintiffs Do Not Allege Other Elements of "International Terrorism" ................................................................................................ 15

CONCLUSION.......................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ahmad v. Christian Friends of Israeli Cmtys.*,
    2014 U.S. Dist. LEXIS 62053 (S.D.N.Y. May 5, 2014) ........................................... 8, 13

*Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296 (2017) ............................................................ 8

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2008) ..................................................................... 4

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) .......................................................................... 4, 5, 6

*Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998) ................................................................. 6, 7

*Boim v. Holy Land Found.*, 549 F.3d 685 (7th Cir. 2008) ............................................................... 15

*Boim v. Quranic Literacy Inst.*, 291 F.3d 1000 (7th Cir. 2002) ..................................................... 15

*Branch v. Smith*, 538 U.S. 254 (2003) ......................................................................................... 1, 3

*Brill v. Chevron Corp.*, 2017 U.S. Dist. LEXIS 4132 (N.D. Cal. Jan. 9, 2017) ................. 7, 8, 15

*City of Sherman v. Henry*, 928 S.W.2d 464 (Tex. 1996) ............................................................... 12

*Cohen v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 76701 (E.D.N.Y. May 18, 2017) ............ 3, 4, 5

*Doe v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016) ............................................................ 3, 4

*Doe v. Bates*, 2006 U.S. Dist. LEXIS 93348 (E.D. Tex. Dec. 27, 2006) ....................................... 4

*Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) ................................................................... 4, 5

*Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ............................... 6

*Fields v. Twitter, Inc.*, 200 F. Supp. 3d 964 (N.D. Cal. 2016) .................................................... 4, 8

*Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116 (N.D. Cal. 2016) .......................................... 4, 5, 8

*Freeman v. City of Pasadena*, 744 S.W.2d 923 (Tex. 1988) ...................................................... 12

*FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009) ............................................................ 6

*Garcia v. San Antonio Hous. Auth.*, 859 S.W.2d 78 (Tex. App. 1993) .................................... 12

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) ............................................. 14

*Goldberg v. UBS AG*, 660 F. Supp. 2d 410 (E.D.N.Y. 2009) .......................................... 10, 11, 14

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ............................................................. 10, 11

*Hawaii v. Office of Hawaiian Affairs*, 556 U.S. 163 (2009) ................................................... 3, 4

*Hinojosa v. S. Tex. Drilling & Expl., Inc.*, 727 S.W.2d 320 (Tex. App. 1987) ....................... 12

---

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ............................................................ 13

*Hui v. Castaneda*, 559 U.S. 799 (2010) ........................................................................................ 3

*Hussein v. Dahabshiil Transfer Servs. Ltd.*,
    2017 U.S. Dist. LEXIS 11756 (S.D.N.Y. Jan. 27, 2017) .............................................. 14

*Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2014) ...................... 2, 6

*Kiffe v. Neches-Gulf Marine, Inc.*, 709 F. Supp. 743 (E.D. Tex. 1989) ............................... 12

*Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969 (2016) ....................................... 3

*MCW, Inc. v. Badbusinessbureau.com, LLC*,
    2004 U.S. Dist. LEXIS 6678 (N.D. Tex. Apr. 19, 2004) ............................................... 6

*Morton v. Mancari*, 417 U.S. 535 (1974) ..................................................................................... 1

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007) ................................. 2

*Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*,
    1999 U.S. Dist. LEXIS 11599 (S.D.N.Y. July 29, 1999) ............................................ 10

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) ........................................................ 15

*PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) ............................................................................. 2

*Pratt v. Martineau*, 870 N.E.2d 1122 (Mass. App. Ct. 2007) ................................................. 7

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976) ........................................................ 2

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) ..................................................................... 7

*Ryan v. Hunton & Williams*,
    2000 U.S. Dist. LEXIS 13750 (E.D.N.Y. Sept. 20, 2000) ........................................... 11

*Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62 (Tex. 1998) ............................. 12

*Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414 (E.D.N.Y. 2013) ................................. 8

*Temple-Insland Forest Prods. Corp. v. Carter*, 993 S.W.2d 88 (Tex. 1999) .......................... 12

*Traynor v. Turnage*, 485 U.S. 535 (1988) ................................................................................... 1

*United Servs. Auto. Ass'n v. Keith*, 970 S.W.2d 540 (Tex. 1998) ............................................ 12

*United States v. 493,850.00 in U.S. Currency*, 518 F.3d 1159 (9th Cir. 2008) ...................... 1

*United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007) ......................................................... 14

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) ........................ 4, 5

*Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202 (2d Cir. 2014) .................................. 13, 14

## STATUTES

18 U.S.C. § 2331 ...................................................................................................8, 9, 13, 15

18 U.S.C. § 2333 ................................................................................................... passim

18 U.S.C. § 2339A ...........................................................................................................13, 15

18 U.S.C. § 2339B ...........................................................................................................13, 15

47 U.S.C. § 230 ................................................................................................... passim

## MISCELANEOUS

Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222,
130 Stat. 852 (2016) ................................................................................... passim

Plaintiffs' Opposition ("Opp.") leaves no doubt that they want to hold Defendants liable for a terrible incident of violence based solely on the ground that some of Defendants' billions of users allegedly were able to post violent and/or objectionable material on Defendants' online platforms. While Defendants have profound sympathy for the victims of this crime, the law does not permit Plaintiffs' theory of liability. Plaintiffs' claims are barred by 47 U.S.C. § 230 and fail to meet the substantive requirements of the Anti-Terrorism Act ("ATA") and state tort law.

## I.   PLAINTIFFS CANNOT EVADE SECTION 230'S ROBUST IMMUNITY

As Defendants have shown, § 230 bars claims that seek to hold an online service provider liable as a "publisher" with respect to third-party content. Plaintiffs do not dispute that Defendants are providers of "interactive computer service[s]" or that the allegedly unlawful content at issue was supplied by third parties. The theories they do offer in an effort to evade § 230 all fail. *First*, an uncodified statement of purpose in the recently enacted Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852 (2016) ("JASTA"), did not impliedly repeal or "nullify" § 230. *Second*, despite Plaintiffs' attempt to characterize Defendants' conduct as providing communication "functionality" and "account reconstitution," their claims still seek, impermissibly, to impose liability on Defendants as publishers. *Third*, clear case law applying § 230 defeats the theory that Defendants' alleged juxtaposition of third-party ads next to other third-party content made them providers of allegedly unlawful content.

### A.   JASTA Did Not Impliedly Repeal Or Abrogate Section 230

Plaintiffs first argue, without citing any authority, that Congress somehow "nullifie[d]" § 230 when it enacted JASTA last year. Opp. 3-4. Plaintiffs are incorrect.

"It is 'a cardinal principle of statutory construction that repeals by implication are not favored.'" *United States v. 493,850.00 in U.S. Currency*, 518 F.3d 1159, 1167 (9th Cir. 2008); *accord Traynor v. Turnage*, 485 U.S. 535, 548 (1988) (court will not infer a statutory repeal "unless the later statute 'expressly contradict[s] the original act'"). An implied repeal may be found only where two statutes "are in 'irreconcilable conflict,' or where the latter act covers the whole subject of the earlier one and 'is clearly intended as a substitute.'" *Branch v. Smith*, 538 U.S. 254, 273 (2003); *see also Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("[W]hen two

statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."). "[I]n either case, the intention of the legislature to repeal must be clear and manifest." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976); *accord Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007).

No such manifest intent or irreconcilable conflict is present here. Although JASTA made two specific amendments to *other* pre-existing statutes—the Foreign Sovereign Immunities Act ("FSIA") and the ATA—it did not amend (or even reference) the immunity created by § 230 or address in any way the activities of online service providers. Nothing in JASTA's text or history suggests any intent to override the established immunity that § 230 has provided for two decades—one that has repeatedly been "understood to merit expansion … into new areas." *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 408 (6th Cir. 2014). The operative provision of JASTA at issue, codified at 18 U.S.C. § 2333(d), states only that, under certain circumstances involving a defined act of international terrorism, "liability *may be asserted* as to any person who aids and abets … or who conspires with the person who committed [the] act," *id.* (emphasis added). It does not say that liability is *assured*—for example, by providing for liability "notwithstanding" existing immunities or defenses, including that provided to online service providers. *Cf. PLIVA, Inc. v. Mensing*, 564 U.S. 604, 621-22 (2011) (describing absence of "*non obstante*" provision as indication that legislature did not intend a repeal by implication).

Congress's silence about § 230 in enacting JASTA is particularly significant because the Act expressly—but only partially—curtailed a different immunity: namely, foreign sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA") for certain acts of international terrorism. *See* JASTA § 3(a) (negating sovereign immunity for acts of terrorism in the U.S.). JASTA's partial repeal of the FSIA powerfully suggests that Congress meant to abrogate only that one immunity, not surreptitiously to repeal other statutory immunities nowhere mentioned in the text of the act or in the extended debates about its passage. Plaintiffs' reading would not only render superfluous JASTA's express (but partial) repeal of one immunity; it would also improperly override the careful lines Congress drew in effecting that partial appeal.

Applying JASTA as written also creates no "irreconcilable conflict" with § 230. *Branch*, 538 U.S. at 273. JASTA permits secondary liability under the ATA in appropriate circumstances, but where such claims seek to hold online service providers liable for publishing third-party content, § 230 immunity continues to apply, just as it does to any other type of claim. This is how statutory immunities always work: one statute creates potential liability, and the immunity shields a defined class from that liability. In *Hui v. Castaneda*, 559 U.S. 799 (2010), for example, the Supreme Court rejected an argument that a later-enacted liability statute impliedly repealed an existing immunity, reasoning that no "irreconcilable conflict" was created by the mere fact that the older "more comprehensive immunity" would protect some defendants from liabilities created by the new law. *Id.* at 809-10.

The same reasoning governs here. Courts routinely apply § 230 to immunize service providers against claims arising under other federal statutes—including *later*-enacted statutes. *See Doe v. Backpage.com, LLC*, 817 F.3d 12, 22-23 (1st Cir. 2016) (§ 230 barred claims under Trafficking Victims Protection Reauthorization Act of 2008), *cert. denied*, 137 S. Ct. 622 (2017). Most directly on point is *Cohen v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 76701 (E.D.N.Y. May 18, 2017), which applied § 230 to dismiss claims brought under JASTA—in the face of the same implied-repeal argument Plaintiffs make here. *See* Opp. to Mot. to Dismiss at 27 n.6, *Cohen v. Facebook, Inc.*, No. 16-04453 (Jan. 13, 2017), ECF No. 29. This Court should do the same.

Plaintiffs' argument is especially weak because it relies not on JASTA's substantive provisions, but instead on the uncodified findings and statement of purpose that preface the legislation. Opp. 3-5 (citing JASTA § 2(a)(6), (b)). It is well settled that such hortatory preambles are not law unto themselves, and do not change the scope of the operative provision of a statute—much less effectuate implied repeals of pre-existing and operative federal laws. *See Hawaii v. Office of Hawaiian Affairs*, 556 U.S. 163, 175 (2009); *accord Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1978 (2016) ("prefatory clauses or preambles cannot change the scope of the operative clause"). And in any event, although JASTA's statement of purpose expresses a broad goal of combatting terrorism, it says nothing about online service providers, much less about abrogating existing immunities applicable to them. Nothing in the

statement of purpose or findings provides any suggestion—much less a "clear and manifest" indication (*Hawaii*, 556 U.S. at 175)—that Congress meant to effect a significant change in U.S. law by eliminating the established protections that § 230 provides for online intermediaries.[1]

## B. Section 230 Bars Plaintiffs' "Functionality" Theory

Plaintiffs' next theory—that their claims focus not on publishing third-party content but on the provision of "proprietary functions," such as "allow[ing] … accounts to reconstitute" (Opp. 20-21)—also fails. "[W]hat matters" for § 230 immunity is not the "label[]" placed on the claim but "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-03 (9th Cir. 2008). This is not a new issue, as Plaintiffs suggest. Opp. 19. On the contrary, courts have repeatedly—and uniformly—held that an online platform's provision of accounts (i.e., functionality) to users is publishing-related conduct protected by § 230. That is true both in ATA cases—*see Fields v. Twitter, Inc.*, 200 F. Supp. 3d 964, 970-74 (N.D. Cal. 2016) ("*Fields I*"); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1123-27 (N.D. Cal. 2016) ("*Fields II*"); *Cohen*, 2017 U.S. Dist. LEXIS 76701, at *28-31—and in other contexts, *see Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420-22 (1st Cir. 2007); *Doe v. MySpace, Inc.*, 528 F.3d 413, 421 (5th Cir. 2008). As these cases explain, § 230 bars such theories because they seek to penalize a protected publishing decision: "the decision to permit third parties to post content." *Fields I*, 200 F. Supp. 3d at 972.

Plaintiffs insist that Defendants could have prevented accounts from reconstituting in a "content-neutral" manner by barring "the incremental naming of accounts which have been taken down" and "request[ing] friends/followers in bulk." Opp. 21. But even if those strategies truly

---

[1] Plaintiffs mistakenly assert that "[n]o part of § 230 relied upon Constitutional principles." Opp. 4. In enacting § 230, "Congress wanted to encourage the unfettered and unregulated development of free speech on the Internet," and the immunity protects important First Amendment principles in ensuring that online platforms are not held liable for disseminating user expression. *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003). Plaintiffs further err in suggesting § 230 does not apply because their claims reference federal criminal statutes. Opp. 19 n.7. Courts have uniformly rejected that argument, holding that § 230's exception of any "Federal criminal statute," 47 U.S.C. § 230(e)(1), does not apply to civil claims that derive from federal criminal statutes. *E.g.*, *Backpage.com*, 817 F.3d at 23; *Doe v. Bates*, 2006 U.S. Dist. LEXIS 93348, *8-12 (E.D. Tex. Dec. 27, 2006).

were content neutral—which they are not[2]—that would make no difference. Because a service provider's "choices as to who may use its platform are inherently bound up in its decisions as to what may be said on its platform," any "attempt to draw a narrow distinction between policing accounts and policing content must ultimately be rejected." *Cohen*, 2017 U.S. Dist. LEXIS 76701, at *29. Contrary to Plaintiffs' suggestion (Opp. 19), § 230 does not turn on whether an editorial strategy would require the service provider to make content-based decisions about user material. So long as the objective of a proffered strategy is to control who can publish or under what terms, § 230 bars claims based on a provider's decision not to adopt that strategy. *Lycos* and *MySpace* make that clear, applying § 230 to claims premised on intermediaries' failure to employ supposedly content-neutral strategies, such as barring users from having multiple screen names, *Lycos*, 478 F.3d at 420, and using age-verification tools, *MySpace*, 528 F.3d at 421-22. The same is true here: holding Defendants liable because they supposedly failed to block users from using certain account names or communicating with other users in certain ways would penalize them for protected publisher activities.[3]

Plaintiffs' theory also would defeat a core objective of § 230: "to encourage interactive computer services and users of such services to self-police the Internet for obscenity and other offensive material." *Batzel*, 333 F.3d at 1028. Plaintiffs assert that, whenever Defendants "voluntarily" "chose[] to delete an account," they thereby "assumed responsibility" for any user action to "reconstitute" that account. Opp. 20-21. But that theory—that a service provider's self-policing efforts become the basis for holding it liable for user behavior—is exactly what

---

[2] Beyond the fact that the posited strategies would require Defendants to decide what content may be posted, including by making assessments about "suspicious conduct" by users (Opp. 21), the entire premise of Plaintiffs' claims is an asserted connection between objectionable content allegedly posted on Defendants' platforms and Micah Johnson's crimes in Dallas. Absent the alleged effect of that third-party content, Plaintiffs' claims against Defendants have no conceivable basis. *Fields II*, 217 F. Supp. 3d at 1124-25; *see also infra* n.3.

[3] Plaintiffs' attempt to focus on the alleged *consequences* of third-party content, such as "new recruits" (Opp. 20), also fails. Such a claim just as much seeks to hold the platform liable as publisher—and is just as much barred—as one premised overtly on the content of that material. Here, for example, Plaintiffs' theory is that Defendants "provide[d] personnel to HAMAS" as a result of allegedly "giving HAMAS the means to post, save, and distribute videos and other messages." *Id.* That theory is plainly content-based.

---

Congress sought to overturn in enacting § 230.  *See Jones*, 755 F.3d at 408 (§ 230 "set out to abrogate" precedent holding a service provider liable "because it had engaged in voluntary self-policing of … third-party content"); *Batzel*, 333 F.3d at 1029-30 (same).

### C. Targeting Advertising Does Not Make Defendants Content Providers

Likewise without merit is Plaintiffs' argument that § 230 does not apply because Defendants supposedly act as "information content providers" by "targeting ads" and displaying "composite content."  Opp. 21-23.  As already explained (Mot. 11-12), a service provider does not "develop" content merely by "augmenting the content generally," *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008)—even where (unlike here) it "has an active, even aggressive role in making available content prepared by others," *Blumenthal v. Drudge*, 992 F. Supp. 44, 51-52 (D.D.C. 1998).  A provider loses immunity only "if it contributes materially to the alleged illegality of the conduct." *Roommates*, 521 F.3d at 1168.[4] No such facts are alleged here.  Not only were the ads themselves third-party content, but Plaintiffs do not even suggest that they were objectionable or contributed to the alleged illegality of any terrorist content at issue.  Indeed, Plaintiffs admit that Defendants' use of targeted ads applies across their platforms and has no special connection to terrorism or to Plaintiffs' ATA claims.  *See, e.g.*, FAC ¶ 91.  The use of "neutral tools" to place ads alongside third-party material, *Roommates*, 521 F.3d at 1171, does not defeat § 230 protection.[5]

---

[4] Plaintiffs' brief (Opp. 22-23) misreads this and other case law.  The court in *Blumenthal* expressly rejected the argument that § 230 protection is limited to "passive conduit[s]," and held AOL immune even though it had solicited, paid for, and "affirmatively promoted" the allegedly defamatory third-party content.  992 F. Supp. at 51-52.  In *MCW, Inc. v. Badbusinessbureau. com, LLC*, 2004 U.S. Dist. LEXIS 6678, at *32 (N.D. Tex. Apr. 19, 2004), the court held the defendants acted as "information content providers" because they themselves had supplied titles and headers that were themselves defamatory.  By contrast, the ads here were created by third parties and are not alleged to be unlawful.  Finally, the aspect of *Roommates* on which Plaintiffs rely involved a service provider that had designed its service to require users to submit content in violation of federal law and then made "aggressive use" of that illegal content in conducting its business.  521 F.3d at 1172.  No such allegations are present here.

[5] Plaintiffs argue that Google is not immune insofar as it allegedly shared advertising revenue with users who posted Hamas-related videos.  Opp. 23-24.  Here again, Plaintiffs cannot explain how a neutral revenue-sharing policy (FAC ¶¶ 93-98) materially contributes to the illegality of terrorist content.  Plaintiffs cite *FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009), but the conduct there—where the service "solicited requests for confidential information protected by law" (*id.* at 1201)—is worlds away from what is alleged here.  And Plaintiffs' other cases make

## II. ALL OF PLAINTIFFS' CLAIMS FAIL ON THEIR OWN TERMS

### A. Plaintiffs Cannot Show Proximate Causation

As argued in Defendants' opening brief, Plaintiffs' attenuated theory of causation comes nowhere close to causally linking their injuries to any alleged misconduct by Defendants. Mot. 15-19. The Opposition does not even try to explain how Johnson's crime—or even his alleged engagement with social media content posted by "black separatist hate groups"—proximately resulted from any alleged misconduct by Defendants related to the alleged use of their platforms by persons affiliated with Hamas. Plaintiffs offer only a strained analogy, positing a scenario in which Smith gives a gun to Jones who leaves it to be found by Billy who, in turn, shoots Tommy. Opp. 16-18. That anecdote does not support Plaintiffs' convoluted causation theory and only underscores what is lacking here. Providing an online platform that can be used to share information about any conceivable issue is not remotely like giving a child a loaded gun. Like all tools, online platforms can be misused, but that does not mean Defendants peddle in "dangerous instrumentalit[ies]," *Pratt v. Martineau*, 870 N.E.2d 1122, 1128 (Mass. App. Ct. 2007), much less that they assume legal responsibility merely because bad actors misuse their services. This is especially so where, as here, the only alleged connection between the alleged bad actors and the crime at issue is indirect, intangible, and entirely speculative.

Plaintiffs erroneously invite the Court to employ a looser causation standard used by some out-of-circuit courts construing claims under the ATA. Opp. 15-16. As Defendants have shown (Mot. 16, n.3), that approach ignores both the text of the statute and the weight of authority, including a recent decision in this district squarely holding that the ATA's "by reason of" language requires a sufficiently "direct[]" relation between the defendant's alleged material support and the plaintiff's alleged injury. *See Brill v. Chevron Corp.*, 2017 U.S. Dist. LEXIS 4132, at *20 (N.D. Cal. Jan. 9, 2017) ("[T]he proximate causation standard articulated by the Second Circuit in *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) … is well-reasoned and

clear that simply paying users for content does not fall outside § 230. *Blumenthal*, 992 F. Supp. at 51-52. In any event, Plaintiffs' cursory allegations fail on their own terms. They make no plausible allegation that Google actually shared revenue with Hamas—much less that it did so knowingly or that any such hypothetical sharing had any connection to the Dallas shooting.

compelling, and the Court applies it here."). Plaintiffs' focus on "foreseeability" (Opp. 15-16) also flies in the face of recent Supreme Court authority confirming that "foreseeability alone does not ensure the close connection that proximate cause requires." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1306 (2017).[6]

In any event, Plaintiffs' claims still would fail even if a looser causation standard were used. Plaintiffs allege no facts that plausibly could show that Defendants' "actions were 'a substantial factor in the sequence of responsible causation.'" Opp. 15 (quoting *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 432 (E.D.N.Y. 2013)). Nothing in the FAC suggests that Defendants' allegedly imperfect efforts to police their services against use by terrorists were a substantial factor leading to Johnson's crime. *See, e.g., Ahmad v. Christian Friends of Israeli Cmtys.*, 2014 U.S. Dist. LEXIS 62053, at *13-14 (S.D.N.Y. May 5, 2014) (no proximate cause based on alleged transfer of funds to a large group, some of whom eventually committed terrorist attacks), *aff'd*, 600 F. App'x 800 (2d Cir. 2015); *Brill*, 2017 U.S. Dist. LEXIS 4132, at *20 (rejecting attenuated causation allegations). As in *Fields*, Plaintiffs' alleged chain of causation is far "too speculative [and] attenuated to raise a plausible inference of proximate causation." *Fields I*, 200 F. Supp. 3d at 974 n.4; *Fields II*, 217 F. Supp. 3d at 1127 n.3. This flaw defeats not only Plaintiffs' direct liability claims under the ATA, but also their state law claims, which similarly require a showing of proximate cause.

## B. Plaintiffs Cannot Save Their Secondary Liability ATA Claims

Plaintiffs' Opposition likewise confirms that their claims under § 2333(d) for aiding and abetting and conspiracy must be dismissed. This is so for several independent reasons.

*First*, Plaintiffs' Opposition does nothing to establish that the act from which their injuries arose—a shooting in Dallas—constituted "international terrorism" as defined in the ATA, 18 U.S.C. § 2331(1)(C), and as required to state a claim under the ATA, *see* § 2333(a), (d).

---

[6] Plaintiffs further err in arguing that JASTA's "findings" impliedly relaxed the ATA's causation requirement. Opp. 4. JASTA did not amend the "by reason of" language in Section 2333(a) and did not purport to alter the causation analysis this phrase has long been understood to require. And in any event, as shown above, the findings and preamble cannot expand or alter the operative terms of the statute, which continues to mandate the "by reason of" standard.

---

Plaintiffs do not dispute that the shooting was purely domestic, having been carried out in Texas by a U.S. citizen born in the United States, against victims who also were U.S. citizens. FAC ¶¶ 1, 8-9, 123. And although Plaintiffs try to cast their claims as involving actions by Hamas that "transcend national boundaries" (Opp. 6), they do not show how their allegations about *this incident* transcended national boundaries as required by the statute. § 2331(1)(C). They do not allege that the "means" by which Johnson committed his attack involved any communication with any international terrorist group; that the persons he apparently intended to "intimidate or coerce" were outside the United States; or that he "operate[d]" or sought asylum overseas. *See id.* Rather, they contend that he was "radicalized" in the U.S. by viewing content from U.S.-based "black separatist hate groups." FAC ¶¶ 129, 132.

*Second*, Plaintiffs allege no facts that would establish that a designated foreign terrorist organization "committed, planned, or authorized" the Dallas attack, as § 2333(d) requires. Plaintiffs' conclusory and unsubstantiated statements to the contrary (Opp. 2, 5-6, 11)—all of which rest on allegations that Hamas propaganda influenced "black separatist hate groups" (FAC ¶¶ 132, 139-142), who in turn created other propaganda that allegedly caused Johnson to be "radicalized" (FAC ¶¶ 122, 130-131)—are not remotely sufficient. Section 2333(d) does not permit claims for attacks merely (and indirectly) inspired by a terrorist group's online postings. Instead, its plain language requires direct and advance participation by the FTO in the specific attack at issue. This failure alone defeats Plaintiffs' claims.

*Third*, Plaintiffs ignore the requirement of § 2333(d) that the defendant have conspired with—or have knowingly provided substantial assistance to—the specific "person" who "committed" the alleged act of international terrorism. § 2333(d)(2). Plaintiffs do not dispute that that person is Johnson (FAC ¶¶ 1, 123), yet they do not even try to show that Defendants knowingly assisted or entered into any agreement with him. Plaintiffs do not mention Johnson in trying to defend their conspiracy claim, and mention him only once in connection with their aiding and abetting claim. And although they allege that Johnson made "use of Defendants' platforms" to "'lik[e]' pages calling for the murders of police officers" (Opp. 9-10), they do not and cannot suggest that this alleged use constituted "substantial assistance" knowingly provided

by Defendants to Johnson in the commission of his crimes.  Nor can Plaintiffs avoid this problem by suggesting that the availability of Defendants' platforms provided assistance to Hamas, such that Defendants supposedly assisted in "Hamas's ongoing engagement in international terrorism" and had a "tacit agreement [with] Hamas" (Opp. 8-11)—which connections in some inexplicable way inspired Johnson to shoot police officers in Dallas.  Even if all of that could be alleged, it would not be enough under § 2333(d) because it would not establish that Defendants knowingly provided substantial assistance to Johnson himself.

*Fourth*, Plaintiffs fail to establish the key elements of aiding and abetting—namely, that Defendants acted with knowledge of a specific illegal scheme and knowingly assisted the principal violation.  Opp. 7 (citing *Halberstam v. Welch*, 705 F.2d 472, 477, 488 (D.C. Cir. 1983)).[7]  At most, Plaintiffs argue that Defendants made their services widely available to billions of users, while being generally aware that some attempting to use their services may have been affiliated with Hamas.  Opp. 8.  That is not enough to meet the *mens rea* required for aiding and abetting liability for Johnson's crime.  *E.g.*, *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, 1999 U.S. Dist. LEXIS 11599, at *25-26 (S.D.N.Y. July 29, 1999) (liability "'require[s] actual knowledge of the primary wrong' by the defendant").

Likewise, "[it] has long been recognized that substantial assistance means more than just a little aid, and requires knowledge of the illegal activity that is being aided and abetted, a desire to help that activity succeed, and some act to further such activity to make it succeed." *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 425 (E.D.N.Y. 2009).  Although Plaintiffs cite *Halberstam*, they try to dilute its six-factor test (Opp. 8-10) and also ignore its clear requirement that an aider and abettor must act in some deliberate way to help the actual perpetrator.  *See* 705 F.2d at 484,

---

[7] In *Halberstam*, the court found that the defendant had "general awareness" of her role in the illegal criminal scheme because she not only lived for five years with the individual (Welch) who carried out that scheme, but also witnessed ongoing and direct evidence of his criminal behavior.  705 F.2d at 486-88.  Here, by contrast, Plaintiffs have not alleged that Defendants, "at the time" they provided their services, even knew about Johnson at all, much less that they had some sort of "awareness" of his criminal plan.  *Halberstam* also found that the defendant had provided "knowing assistance" to the principal violation because, among other things, she acted "as banker, bookkeeper, recordkeeper, and secretary … in an unusual way under unusual circumstances." *Id.*. The FAC alleges no such acts of specific assistance to Johnson.

488 ("state of mind" factor focuses on whether the defendant had "a deliberate long-term intention to participate in an ongoing illicit enterprise"). Plaintiffs do not suggest (nor could they) that Defendants had any "desire" to help Johnson carry out acts of violence, that they knowingly worked with Johnson over an extended period of time, or that they did anything to encourage Johnson to commit the Dallas shooting. Plaintiffs' allegations of "assistance" to Hamas—several levels removed from Johnson's actions and not remotely like the facts of *Halberstam*—are insufficiently direct to state an aiding and abetting claim under § 2333(d). Courts have not hesitated to reject similarly remote allegations of aiding and abetting. *See Goldberg*, 660 F. Supp. 2d at 425 ("[D]efendant's alleged actions in performing three wire transfers for [a primary Hamas fundraiser] fail to establish 'substantial assistance' of the sort required to support an aiding and abetting claim."); *Ryan v. Hunton & Williams*, 2000 U.S. Dist. LEXIS 13750, at *29 (E.D.N.Y. Sept. 20, 2000) (allegations of a bank's "failing to shut down the accounts sooner" does "not rise to the level of substantial assistance").

*Fifth*, Plaintiffs' conspiracy theory fails because they have not alleged an agreement with Johnson (or anyone else) "to participate in an unlawful act." *Halberstam*, 705 F.2d at 477. Allegations that Defendants made their services widely available for use by the public, that Defendants knew generally that some people affiliated with Hamas might try to use those services, and that Defendants could have done more to prevent Hamas-affiliated users from being able to post content, do not amount to "indirect evidence" of a conspiracy between Defendants and Johnson. Whether conspiracy liability can ever be established with proof of a "tacit" agreement (Opp. 10-11) is beside the point, because nothing Plaintiffs allege or argue plausibly suggests Defendants were "willing partners" of Johnson. *Halberstam*, 705 F.2d at 486.

## C. Plaintiff Pennie Cannot Plead a Cognizable Injury

As Defendants showed in their moving papers (Mot. 24-25), Plaintiff Pennie's claims also must be dismissed because, as a "first responder" who was neither present during the Dallas shooting nor a close relative of any victim, he does not and cannot allege a cognizable injury. *See* FAC ¶ 137. Controlling Texas law defeats Pennie's argument (Opp. 24-25) that his arrival at the scene soon after the shooting affords him a basis to sue. *See Uni. Servs. Auto. Ass'n v. Keith*,

970 S.W.2d 540, 541-42 (Tex. 1998) (denying mother's claim even though she arrived at the scene immediately after auto accident and heard her daughter crying out from inside wreckage).

Texas law also bars Pennie's contention (Opp. 25) that he meets the "closely related" requirement for bystander claims as a "co-worker and close friend" of some of the individuals shot by Johnson. *See Hinojosa v. S. Tex. Drilling & Expl., Inc.*, 727 S.W.2d 320, 324 (Tex. App. 1987); *Garcia v. San Antonio Hous. Auth.*, 859 S.W.2d 78, 81 (Tex. App. 1993) (limiting recovery to "relatives residing in the same household, or parents, siblings, children, and grandparents of the victim"); *Kiffe v. Neches-Gulf Marine, Inc.*, 709 F. Supp. 743, 745 (E.D. Tex. 1989) (denying recovery to plaintiff who had only "served with [victim] in close proximity aboard ship"). Pennie cites *City of Sherman v. Henry*, 928 S.W.2d 464 (Tex. 1996), as holding that "the bond between fellow police officers from the same department cannot be questioned" (Opp. 25), but that case did not address whether a non-familial relationship between officers allows bystander liability. *See Sherman*, 928 S.W.2d at 465-67. Plaintiffs also are incorrect that under *Freeman v. City of Pasadena*, 744 S.W.2d 923, 924-25 (Tex. 1988), foreseeability alone is enough. "To recover as a bystander under *Freeman*," a plaintiff must meet all three elements identified in that case, which are presence, foreseeability, and a close familial relationship. *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 n.6 (Tex. 1998) (denying recovery to plaintiff who failed to "meet the third requirement" of familial relationship); *Keith*, 970 S.W.2d at 542 (plaintiff must meet all three elements).[8]

### D.  Plaintiffs' Other ATA Arguments Are Meritless

Plaintiffs devote two sections of their brief (Opp. 11-15) to discussing other defects that independently bar their ATA direct liability claims but that Defendants' motion did not present (in light of the many other grounds for dismissal that the motion asserted). This oddity seems to stem from Plaintiffs' having copied much of their opposition from another brief their counsel

---

[8] Pennie seems to ask this Court to invent, under Texas law, a new first-responder exception to the physical harm requirement for emotional distress claims. Opp. 25. Doing so would violate the clear Texas rule that, "[a]bsent physical injury, the common law has not allowed recovery for negligent infliction of emotional distress except in certain specific, limited instances." *Temple-Island Forest Prods. Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex. 1999).

recently co-filed in another case. *See Gonzalez v. Google, Inc.*, No. 16-cv-03282 (DMR) (N.D. Cal. June 23, 2017), ECF No. 101. Now that Plaintiffs have opened the door, Defendants will address these defects as additional grounds for dismissal of Counts III and IV.

### 1. The FAC Fails To Allege Violations of 18 U.S.C. §§ 2339A and 2339B

For direct civil liability under the ATA, the defendant itself must have committed an "act of international terrorism." *See* § 2333(a). One of the multiple elements of such an act is the violation of a criminal law (*see* § 2331(1)(A))—here, the laws Plaintiffs accuse Defendants of having violated are the so-called "material support" statutes, §§ 2339A and 2339B. Plaintiffs are incorrect that the FAC alleges facts sufficient to satisfy the strict *mens rea* required for a violation of those statutes.[9] As to § 2339A, Plaintiffs' reliance (Opp. 12) on *Ahmad*, 2014 U.S. Dist. LEXIS 62053, is misplaced. *Ahmad* dismissed an ATA claim where the plaintiffs failed plausibly to allege that the defendants "kn[ew] or intended that the support would be used [by others] in preparation for, or in carrying out, violations of certain [other] federal criminal statutes." *Id.* at *7-12. As in *Ahmad*, the FAC offers no factual allegations establishing that Defendants had such knowledge or intent, and its conclusory assertions are insufficient.

To try to establish *mens rea* under § 2339B, Plaintiffs rely on their allegations that Defendants knew that Hamas is a designated FTO (Opp. 11, 13-14), but that is not enough. The statute also requires a showing that the defendant knowingly provided material support to the FTO. *See Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 208 (2d Cir. 2014) ("Plaintiffs must show that [the defendant] *both* knew that it was providing material support to [an FTO] *and* knew that [the FTO] engaged in terrorist activity." (emphasis added)). To satisfy this latter element, the defendant had to know that it was providing support directly to the organization itself—that is, that the support was "coordinated with or under the direction of a designated foreign terrorist organization." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31-32 (2010).

---

[9] Plaintiffs erroneously suggest that JASTA's uncodified "findings" somehow established a new "recklessness" standard for claims based on §§ 2339A and 2339B. Opp. 4. As explained above (*supra* § I.A & n.6), that prefatory language cannot expand JASTA's own terms, much less that of other statutes that JASTA did not purport to amend, and nothing in the operative provisions of JASTA establishes a new scienter standard. In any event, Plaintiffs have not plausibly alleged that Defendants *recklessly* provided material support to Hamas.

Here, however, nothing in the FAC permits the conclusion that Defendants deliberately provided support to Hamas.

Plaintiffs try to overcome these defects by invoking "willful blindness" (Opp. 13), a doctrine that, where it applies, is a means of establishing that a party had the requisite knowledge. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). It requires "deliberate ignorance," *United States v. Heredia*, 483 F.3d 913, 918 n.4 (9th Cir. 2007)—that is, "active efforts" by the defendants to avoid confirming the truth of a given fact, *Global-Tech*, 563 U.S. at 770-71. Even if the doctrine were to apply to the material support statutes, Plaintiffs cannot meet its strict test because they have not alleged, and cannot allege, that Defendants (1) were actually aware of a high probability that they were providing material support to Hamas and (2) made an active and deliberate effort to avoid confirming that fact. *Id.* Vague assertions that Defendants generally knew that unidentified persons tied to Hamas were among Defendants' billions of users (Opp. 13) are insufficient. *See Hussein v. Dahabshiil Transfer Servs. Ltd.*, 2017 U.S. Dist. LEXIS 11756, at *20 (S.D.N.Y. Jan. 27, 2017) (generalized knowledge of risk "is not the same as knowing or deliberately-indifferent support for terror").

Plaintiffs' other cases (Opp. 13) do not hold otherwise. It was undisputed in those cases that the defendants knowingly provided financial services to specific customers who were involved in terrorism; the only question was whether the defendants also knew of that involvement. *See Weiss*, 768 F.3d at 208; *Goldberg*, 660 F. Supp. 2d at 428. This case is critically different. Defendants provide free and widely available online platforms used by billions of people. Plaintiffs cannot seriously claim that Defendants know the identity and affiliation of each such person, or that they "knowingly" provide support to each user. Although Plaintiffs assert that unidentified accounts displayed "the emblems and symbols of HAMAS," they do not suggest that Defendants were aware of those accounts, and they admit that Defendants removed Hamas accounts when it did learn about them. Opp. 14; FAC ¶¶ 55, 69, 72, 75. Plaintiffs offer no authority for their sweeping assertion that the provision of generalized

services to the public with knowledge that the services might be used in an unauthorized way by some unidentified affiliate of an FTO satisfies the "material support" scienter requirement.[10]

### 2. Plaintiffs Do Not Allege Other Elements of "International Terrorism"

Plaintiffs also assert that any violation of the material support statutes is automatically an "act of international terrorism" under the ATA. Opp. 14. Here too, Plaintiffs are incorrect. Judge Donato's recent decision in *Brill* is directly on point. The court there rejected the very argument Plaintiffs make here, holding that an alleged material support violation does not, by itself, satisfy the other elements of "international terrorism" required by § 2331(1), including the requirement that the defendant's conduct "appear to be intended" to achieve a specific terrorism purpose. *See Brill*, 2017 U.S. Dist. LEXIS 4132, at *17-18.[11] The same analysis applies here. Plaintiffs do not even try to explain how Defendants, simply by offering their services to billions of users around the world, engaged in conduct that "appeared to be intended … to" accomplish a terrorist purpose and, further, involved acts that were "violent" or "dangerous to human life." § 2331(1)(A)-(B)(i). As in *Brill*, Plaintiffs' allegations are far removed from the kinds of substantial and direct assistance to terrorists that have led courts to allow ATA claims premised on material support. 2017 U.S. Dist. LEXIS 4132, at *18-20.

### CONCLUSION

For all these reasons, as well as those set forth in Defendants' moving papers, the FAC should be dismissed without further leave to amend.

---

[10] Plaintiffs' assertion that failing to stop someone's use of an open Internet platform constitutes "material support" for terrorism (Opp. 11-12), has no support, and the suggestion that Defendants could be held criminally liable under §§ 2339A and 2339B simply because certain users may have posted content online (despite Defendants' efforts and in violation of their rules) would raise serious First Amendment concerns. *See* Mot. 18-19 & n.5; *cf. Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017) (First Amendment protects use of social media services).

[11] *Boim v. Quranic Literacy Institute*, 291 F.3d 1000 (7th Cir. 2002), is not to the contrary. It held that providing large sums of money directed to Hamas, knowing of the group's terrorist aims, was an act of "international terrorism." *Id.* at 1014-15. It did not hold that every violation of the material support laws constitutes such an act. *See Brill*, 2017 U.S. Dist. LEXIS 4132, at *17-18. Plaintiffs' out-of-district cases (Opp. 14) misconstrue *Boim* and disregard key provisions of § 2331(1). And in any event, even if knowingly giving large sums of money to known terrorist groups were "like giving a loaded gun to a child," *Boim v. Holy Land Found.*, 549 F.3d 685, 690 (7th Cir. 2008), offering a general service to millions of people is not, even if terrorists may be among those who might receive the service. *Id.* at 699.

---

Dated: July 14, 2017

Respectfully submitted,

     /s/ Kristin A. Linsley
KRISTIN A. LINSLEY (CA SBN 154148)
klinsley@gibsondunn.com
JEANA BISNAR MAUTE (CA SBN 290573)
jbisnarmaute@gibsondunn.com
SHELI R. CHABON (CA SBN 306739)
schabon@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendant*
**FACEBOOK, INC.**

     /s/ Patrick J. Carome
SETH P. WAXMAN (*pro hac vice*)
seth.waxman@wilmerhale.com
PATRICK J. CAROME (*pro hac vice*)
patrick.carome@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

MARK D. FLANAGAN (CA SBN 130303)
mark.flanagan@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Defendant*
**TWITTER, INC.**

     /s/ Brian M. Willen
BRIAN M. WILLEN (*pro hac vice*)
bwillen@wsgr.com
WILSON SONSINI
   GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

DAVID H. KRAMER (CA SBN 168452)
dkramer@wsgr.com
LAUREN GALLO WHITE (CA SBN 309075)
lwhite@wsgr.com
WILSON SONSINI
   GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

*Attorneys for Defendant*
**GOOGLE INC.**

## ATTORNEY ATTESTATION

I, Brian M. Willen, am the ECF User whose ID and password are being used to file this Memorandum.  In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other signatories.

By:   /s/ Brian M. Willen
Brian M. Willen

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2017, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

By:   /s/ Brian M. Willen
Brian M. Willen